1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

RONALD MONROE,

                                    Plaintiff,

        v.

CORRECTIONAL OFFICER WALKER, et. al.,

                                    Defendants.

Case No. 3:14-cv-515-MMD-WGC

**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is Defendants' Motion To Dismiss. (ECF No. 17.)[1] Plaintiff filed a response (ECF No. 21) and Defendants filed a reply (ECF No. 22).

After a thorough review, the court recommends that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

Plaintiff was formerly an inmate incarcerated within the Nevada Department of Corrections (NDOC). (Pl.'s Compl., ECF No. 6.) He is proceeding pro se in this action brought pursuant to 42 U.S.C. § 1983. (*Id.*) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC). (*Id.*) Defendants are LCC Correctional Officer Debra Walker and LCC's Warden, Robert LeGrand. (*Id.*)

On screening, Plaintiff was allowed to proceed with claims under the Free Exercise Clause as well as the Equal Protection Clause. (Screening Order, ECF No. 5.)

_____

[1] Refers to court's electronic case filing (ECF) number.

1   Plaintiff alleges that on February 28, 2014, Walker told him he could not wear his
2   approved religious Islamic headgear, a kufi, on the tier, because it was not on his property card.
3   (ECF No. 6 at 3.) Plaintiff asked the property room sergeant to put it on his property card, but
4   was told the kufi did not go on his card. (*Id*.) The next time he wore his kufi, on March 13, 2014,
5   Walker called "S&E" on him due to his refusal to remove the kufi. (*Id*.) He contends that Walker
6   tries to enforce rules that are not part of the prison's regulations. (*Id*. at 6.) Then, on March 22,
7   2014, while walking with two Jewish inmates who wear wearing yarmulkes, he was confronted
8   by Walker again. Plaintiff avers that Walker did not say a word to the Jewish inmates, but
9   belittled and harassed him because he is Muslim. (*Id*. at 3.) When he asked why she confronted
10  him and not the other inmates, he was told, "because she knew they were Jewish." (*Id*. at 5.) He
11  goes on to allege that black Muslims in Unit 6 at LCC are watched and harassed. (*Id*. at 4.) He
12  claims that once this issue was brought to Warden LeGrand's attention, he should have tried to
13  resolve the matter. (*Id*.) He avers that Walker disregards the regulations because she has told
14  others that she does not like Muslims. (*Id*. at 6.)

15  Plaintiff submitted his grievance on this issue with his complaint. (ECF No. 6 at 10-22.)
16  At the informal level, Plaintiff reported that on February 28, 2014, Walker called him to the
17  bubble and demanded he remove his "beenie" while on the tier. (*Id*. at 19.) He informed her it
18  was not a "beenie," but a "kufi," a Muslim religious head dress. (*Id*.) She asked if he was a
19  declared Muslim, and he stated that he is, and she said she did want "'us' inmates to wear
20  unauthorized material in the unit." (*Id*. at 21.) After he showed her it was not hobby craft, he was
21  permitted to continue to wear it, and was under the impression that the matter was resolved. (*Id*.)
22  Then, on March 13, 2014, Walker called Plaintiff to the bubble and said, "I told you to take that
23  off[.]" (*Id*.) Plaintiff stated that he thought they had an understanding after the last incident, and
24  Walker replied that Plaintiff was right. (*Id*.) On March 22, 2014, however, while Plaintiff was
25  talking to another inmate, who is Jewish and was wearing a yarmulke, Walker told Plaintiff to
26  take his kufi off because it was not on his property card, but she did not say anything to the
27  Jewish inmate. (*Id*. at 21-22.) Plaintiff felt slighted, and asked for a grievance, and requested that
28  she call "S&E" due to perceived religious discrimination and racial imbalance. (*Id*. at 22.) In the

1    grievance, he states that Administrative Regulation (AR) 710 clearly allows a kufi to be worn

2    inside the unit. (*Id.*) He asked why Walker only questioned Islamic inmates, and not those of

3    other faiths. (*Id.*)

4           In response, he was advised that his statement did not corroborate with the officer's

5    statement, and that he had not provided proof to substantiate his claim he was being harassed

6    based on his religious declaration and ethnicity or that his First Amendment rights were violated.

7    (*Id.* at 18.) At the first level, LeGrand responded that his grievance was being referred to the

8    Inspector General for review. (*Id.* at 13.) He received a similar response at the second level. (*Id.*

9    at 10.)

10          Plaintiff also includes with his complaint a declaration of the Jewish inmate referenced in

11   his grievance. (ECF No. 6 at 27-28.) The inmate states that on March 22, 2014, he was talking

12   with Plaintiff on the tier of their unit when Walker called Plaintiff to the bubble and ordered him

13   to remove his kufi, stating he was not allowed to wear it on the tier. (*Id.*) At the time, the Jewish

14   inmate was wearing his yarmulke because it was the Sabbath, and Walker did not say a word to

15   him. (*Id.*)

16          Defendants now move to dismiss Plaintiff's action. (ECF No. 17.)

17                                **II. LEGAL STANDARD**

18          Federal Rule of Civil Procedure 12(b) contemplates the filing of a motion to dismiss for

19   the failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

20   Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab.*

21   *Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). In reviewing the complaint under this

22   standard, the court must accept as true the allegations of the complaint, *Hosp. Bldg. Co. v.*

23   *Trustees of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleadings in the light most

24   favorable to plaintiff, and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395

25   U.S. 411, 421 (1969). This does not apply, however, to "legal conclusions." *Ashcroft v. Iqbal*,

26   556 U.S. 662, 678 (U.S. 2009). "Threadbare recitals of the elements of a cause of action,

27   supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "While legal

28

1   conclusions can provide the framework for a complaint, they must be supported by factual

2   allegations." *Id.* at 679.

3         Allegations in pro se complaints are held to less stringent standards than formal pleadings

4   drafted by lawyers, and must be liberally construed. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980);

5   *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*); *Hamilton v. Brown*, 630 F.3d 889,

6   893 (9th Cir. 2011).

7         Under Federal Rule of Civil Procedure 8(a), "a claim for relief must contain...a short and

8   plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P.

9   8(a)(2).  The Supreme Court has found that at a minimum, a plaintiff should state "enough facts

10   to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

11   570 (2007); *see also Iqbal*, 556 U.S. at 678.

12         The complaint need not contain detailed factual allegations, but it must contain more than

13   a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also*

14   *Iqbal*, 556 U.S. at 678. It must contain factual allegations sufficient to "raise a right to relief

15   above the speculative level." *Twombly,* 550 U.S. at 555. "The pleading must contain something

16   more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of

17   action." *Id.* (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36

18   (3d ed. 2004)).

19         The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair

20   notice of what the...claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

21   (internal quotation marks and citation omitted).  "A claim has facial plausibility when the

22   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

23   defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

24   "Plausibility" is "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

25   (citation omitted). "Determining whether a complaint states a plausible claim for relief" is "a

26   context-specific task that requires the reviewing court to draw on its judicial experience and

27   common sense." *Id.*  at 679 (citation omitted).  Allegations can be deemed "implausible" if there

28   are "obvious alternative explanation[s]" for the facts alleged. *Id.* at 682.

1    A dismissal should not be without leave to amend unless it is clear from the face of the

2    complaint that the action is frivolous and could not be amended to state a federal claim, or the

3    district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d

4    1103, 1106 (9th Cir. 1995) (dismissed as frivolous); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th

5    Cir. 1990).

6    As a general rule, the court may not consider any material beyond the pleadings in ruling

7    on a motion to dismiss for failure to state a claim without converting it into a motion for

8    summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The

9    court may, however, consider exhibits attached to the complaint, such as the grievance

10   documentation Plaintiff has attached, as well as matters properly subject to judicial notice. *See*

11   *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam).

12   Defendants rely on a portion of NDOC Administrative Regulation (AR) 810.3 in support

13   of their motion. (ECF No. 17-1.) Other district courts within the Ninth Circuit have taken judicial

14   notice of prison administrative regulations pursuant to Federal Rule of Evidence 201. *See e.g.,*

15   *Jackson v. Sullivan,* No. C 09-1785 CW (PR), 2013 WL 271554, at * 2 (N.D. Cal. Jan. 24,

16   2013); *Walker v. Hutchinson*, No. 1:05-cv-00709-OWW-GSA-P, 2009 WL 4878706, at * 2

17   (E.D. Cal. Dec. 10, 2009). The court will do so here, and will likewise take judicial notice of the

18   portion of the AR and LCC housing rules submitted by Plaintiff in support of his opposition.

19   **III. DISCUSSION**

20   **A. First Amendment Free Exercise Clause**

21   "The First Amendment, applicable to state action by incorporation through the

22   Fourteenth Amendment ... prohibits government from making a law prohibiting the free exercise

23   [of religion]." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013)

24   (citations and quotation marks omitted, alteration original). "The right to exercise religious

25   practices and beliefs does not terminate at the prison door. The free exercise right, however, is

26   necessarily limited by the fact of incarceration, and may be curtailed in order to achieve

27   legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196,

28   197 (9th Cir. 1987) (per curiam); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348

1    (1987); *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Hartmann*, 707 F.3d at 1122; *Shakur v. Schriro*,

2    514 F.3d 878, 883-84 (9th Cir. 2008). To implicate the free exercise clause, a prisoner must

3    establish his belief is both sincerely held and rooted in religious belief. *See Shakur*, 514 F.3d at

4    884-85.

5           First, Defendants point to another case involving the religious property of an inmate

6    where the undersigned concluded that the regulations limiting the amount of property and use of

7    religious property were rationally related to the prison's goals of safety and security, and that the

8    plaintiff had various alternatives to his faith so it could not be said that he was denied all means

9    of religious expression. (ECF NO. 17 at 4, citing *Stevens v. Skolnik*, No. 3:09-cv-00227-RCJ,

10   2014 WL 2573392, at * 6, 8 (D. Nev. June 9, 2014), Report & Recommendation at ECF No. 151

11   in 3:09-cv-00227-RCJ-WGC, adopted and accepted at ECF No. 158.)

12          The undersigned did issue that report and recommendation, which was adopted by

13   District Judge Jones, and ultimately affirmed by the Ninth Circuit. In that case, the plaintiff

14   asserted that AR 810 violated his rights because it placed limits on the religious property items

15   he was allowed to possess as a member of the Native American Faith Group, and that a particular

16   defendant violated his rights when he allegedly took and destroyed certain of Plaintiff's religious

17   items. (*See* 3:09-cv-00227-RCJ-WGC, ECF No. 151 at 2.) When the court analyzes the

18   legitimacy of the regulation of an inmate's religious expression, it is instructed to afford

19   appropriate deference to prison officials by considering the factors set forth in *Turner v. Safley*,

20   482 U.S. 78 (1987). *See O'Lone*, 482 U.S. at 349.

21          The factors are as follows: (1) "there must be a 'valid, rational connection' between the

22   prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether

23   there are alternative means of exercising the right that remain open to prison inmates"; (3) "the

24   impact accommodation of the asserted constitutional right will have on guards and other inmates,

25   and on the allocation of prison resources generally"; (4) the "absence of ready alternatives" and

26   "the existence of obvious, easy alternatives." *Turner*, 482 U.S. at 89-91.

27          In *Stevens*, the court was considering a *motion for summary judgment* where the

28   defendants argued that the *Turner* factors weighed in their favor.  There, defense counsel

1   undertook painstaking efforts to identify the specific policies/regulations the plaintiff was

2   challenging (the type and amount of religious personal property items an inmate, and in

3   particular a Native American inmate, could possess under that version of NDOC's Faith Group

4   Overview in AR 810), and detailed the particular safety and security interests implicated behind

5   those policies/regulations. (*See* 3:09-cv-00227-RCJ-WGC, ECF No. 151 at 6-11.) The

6   undersigned concluded that the particular policies at issue in that case concerning the type and

7   amount of religious personal property the plaintiff could possess were reasonably related to the

8   particular safety and security concerns outlined by the defendants in that case.

9        It is not clear whether Defendants are arguing that the rationale employed in *Stevens*

10  should automatically apply here, but the court's finding in *Stevens* was not intended to

11  universally apply to every free exercise claim brought by an inmate challenging restrictions on

12  religious personal property within NDOC.  Here, Defendants have filed a motion to dismiss

13  under Federal Rule of Civil Procedure 12(b)(6), which challenges the sufficiency of Plaintiff's

14  *allegations.* Defendants briefly reference "numerous safety and security issues that would be

15  presented by a Neo-Nazi wearing a yamaka or kufi," but this contention is immaterial to

16  Plaintiff's allegations, because under the First Amendment's Free Exercise Clause, a plaintiff

17  need only allege that prison officials have made or enforced a regulation that prohibits the free

18  exercise of religion. Defendants' arguments regarding whether the regulation are reasonably

19  related to legitimate correctional interests are appropriately raised in a motion for summary

20  judgment, supported by admissible evidence.

21       Defendants also reference that the undersigned concluded in *Stevens* that the plaintiff had

22  other avenues available to exercise his religion. (*See* 3:09-cv-00227-RCJ-WGC, ECF No. 151 at

23  12-13.) They then assert a conclusory statement that Plaintiff "maintained numerous avenues in

24  which to exercise his religious beliefs[.]" (ECF NO. 17 at 6.) Whether an inmate had other

25  avenues to exercise his religion is relevant to the second *Turner* factor.  Just because the court

26  concluded, based on *evidence* submitted by the defendants and not contradicted by Stevens, that

27  Stevens had other avenues to exercise does not mean this is the case for the Plaintiff here.

28  Defendants' statement regarding Plaintiff's ability to exercise his religion in other ways is

1     unsupported by any evidence. More importantly for the court's purposes here, the court cannot

2     evidence beyond the pleadings and that which it may take judicial notice of in connection with a

3     motion to dismiss brought pursuant to Rule 12(b)(6). Defendants will have to raise this

4     argument, which undoubtedly requires reliance on evidence outside the pleadings, in a motion

5     for summary judgment.

6         Next, Defendants argue that Plaintiff does not "contend the absence of a rational

7     connection between the regulations governing religious property and a neutral legitimate

8     government interest." (ECF NO. 17 at 4.) The court disagrees. A liberal interpretation of

9     Plaintiff's pleading reveals that he does in fact contend there is no rational connection between

10    Walker's actions and any legitimate correctional interest, because he is alleging that Walker was

11    not properly enforcing the regulations in the first place. He maintains that she asked him whether

12    his kufi was on his property card, but he was told the kufi did not have to be listed on the card.

13    There may be something to this argument since the version of AR 810.3's Religious Property

14    Manual provided by defendants contains no rule regarding placing personal property items on a

15    property card. He also claims that she told him he could not wear the kufi while on the tier, but

16    he provides a copy of housing rules which include a dress code, which clearly permits the

17    wearing of religious headgear on the tier. (ECF No. 21 at 12.)

18         Defendants rely on the argument that staff are required to inspect and search religious

19    property, so Walker was just doing her job when she confronted Plaintiff about his kufi. (ECF

20    No. 17 at 5.) AR 810.3 might give NDOC staff the right to conduct inspections and searches of

21    property (ECF No. 17-1 at 27), but the version provided by Defendants does not require personal

22    religious headgear or any other personal religious item for that matter to be included on a

23    property card. Defendants also mention that to possess personal religious items inmates must

24    complete a Faith Group Affiliation Declaration form. AR 810.3 does require this (ECF NO. 17-1

25    at 27), but there is no contention that Plaintiff did not do so, or that Walker made any inquiry

26    about whether he had filled out this particular form.

27         Next, Defendants argue that there is a rational connection between Walker's inquiries and

28    AR 810.3. (ECF No. 17 at 5.) They assert that she asked Plaintiff whether he was compliant with

1   AR 810.3, and if the kufi was properly registered with the chaplain. (*Id.*) The court is tasked here

2   with determining the sufficiency of the allegations of the complaint, and not with weighing

3   evidence. Plaintiff's complaint does not aver that Walker asked him if the kufi was properly

4   registered with the chaplain. He alleges that Walker asked him whether it was on his property

5   card, and that she told him he could not wear it on the tier. He alleges that he was advised he did

6   not need to have it on his property card, and asserts that it was proper to wear it on the tier. These

7   allegations sufficiently assert that Walker prohibited or admonished Plaintiff, a practicing

8   Muslim, from wearing his approved religious kufi in Unit 6.

9        For these reasons, the court recommends that Defendants' motion to dismiss be denied as

10   to the Free Exercise Clause claim.

11   **B. Equal Protection Clause**

12        The Fourteenth Amendment prohibits the denial of "the equal protection of the laws."

13   U.S. Const.  amend XIV, § 1. It "commands that no State shall deny to any person within its

14   jurisdiction the equal protection of the laws, which is essentially a direction that all persons

15   similarly situated should be treated alike." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir.

16   2001) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

17        Plaintiff alleges that he was treated differently than similarly situated inmates when he

18   alleges that Walker asked him to remove his religious head dress when the Jewish inmates he

19   was with were permitted to keep their Yarmulkes on. When considered in conjunction with the

20   allegations that Walker stated she did not like Muslims (ECF NO. 6 at 6), and that black Muslim

21   inmates were watched at the institution like "we got bombs strapped to our chest[s]" (ECF No. 6

22   at 4), he has sufficiently alleged that Walker intended to discriminate against him based on his

23   status as a black Muslim inmate. As a result, Plaintiff sufficiently states a claim for relief under

24   the Equal Protection clause. Therefore, Defendants' motion to dismiss this claim should be

25   denied.

26   **C. Warden LeGrand**

27        Defendants argue that Plaintiff fails to plead personal involvement in the alleged

28   constitutional deprivations on the part of Warden LeGrand. (ECF NO. 17 at 7-8.)

1    Plaintiff argues that Warden LeGrand is charged with the ministerial duty under AR 740

2    to take appropriate steps to remedy constitutional violations and to forward complaints of staff

3    misconduct to the Inspector General. (ECF NO. 21 at 8.) Plaintiff contends that LeGrand failed

4    to take steps to remedy the constitutional violation when it was brought to his attention.

5    "Under section 1983, supervisory officials are not liable for actions of subordinates on

6    any theory of vicarious liability." *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989).

7    Instead, a supervisor is liable only if: (1) he or she is personally involved in the alleged

8    constitutional deprivation, or (2) there is "sufficient causal connection between the supervisor's

9    wrongful conduct and the constitutional violation." *Id*. at 646.

10    The causal connection can include: "1) [the supervisor's] own culpable action or inaction

11    in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional

12    deprivation of which a complaint is made; or 3) conduct that showed a reckless or callous

13    indifference to the rights of others. *Lemire v. Cal. Dep't of Corr.*, 726 F.3d 1062, 1085 (9th Cir.

14    2013) (citations and internal quotation marks omitted). In addition, "[s]upervisory liability exists

15    even without overt personal participation in the offensive act if supervisory officials implement a

16    policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the

17    moving force of a constitutional violation.'" *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir.

18    2013 (quoting *Hansen*, 885 F.2d at 646).

19    Here, Plaintiff does not allege that LeGrand was personally involved in violating

20    Plaintiff's rights under the Free Exercise or Equal Protection Clauses, *i.e.*, he did not tell Plaintiff

21    to remove his kufi, or harass Plaintiff to tell him he could not wear his religious head dress while

22    allowing other inmates to wear theirs. Plaintiff does not allege that LeGrand's failure to train,

23    supervise or control Walker resulted in the alleged constitutional deprivations. Plaintiff does

24    allege that Warden LeGrand was aware of the situation and did not try to resolve it, but the

25    inference from the documentation attached to the complaint is that this is solely because he

26    responded to Plaintiff's grievance. Moreover, this allegation is contradicted by the grievance

27    documentation itself, which reflects that LeGrand forwarded Plaintiff's grievance to the

28    Inspector General for review. Nor do Plaintiff's allegations contain facts that demonstrate a

1    reckless or callous indifference to Plaintiff's rights on Warden LeGrand's behalf. Finally,

2    Plaintiff does not allege a policy of violating inmates' rights under the Free Exercise and Equal

3    Protection clauses.

4           In the absence allegations of personal involvement or a causal connection to the alleged

5    constitutional violation, LeGrand should be dismissed from this action.

6           As a result, the court recommends that Defendants' motion to dismiss be granted as to

7    Warden LeGrand only. Given LeGrand's involvement, it is clear that Plaintiff could not amend

8    the complaint to state a claim against him. As such, the dismissal of LeGrand should be with

9    prejudice.

10   **D. Qualified Immunity**

11          With respect to Walker, Defendants argue that asking an inmate on three occasions to

12   abide by the rules governing religious property does not violate a clearly established

13   constitutional right. (ECF NO. 17 at 9.) In addition, they argue that Walker acted in good faith

14   reliance on the provisions of AR 810.3 which requires them to investigate religious property and

15   ensure it conforms to the regulations. (*Id*. at 9-10.)

16          Plaintiff argues that his rights were clearly established, and the Defendants' excuses are

17   not reasonable. (ECF No. 21 at 9-11.)

18          "Qualified immunity shields federal and state officials from money damages unless a

19   plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and

20   (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v.  al-*

21   *Kidd*, 131 S.Ct.  2074, 2080 (2011) (quoting *Harlow v.  Fitzgerald*, 457 U.S. 800, 818 (1982));

22   *see also Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013) (citation omitted)

23   ("Qualified immunity protects government officials from civil damages 'insofar as their conduct

24   does not violate clearly established statutory or constitutional rights of which a reasonable person

25   would have known*.");Padilla v.  Yoo*, 678 F.3d 748, 758 (9th Cir.  2012); *Pearson v.  Callahan*,

26   555 U.S. 223 (2009). "Qualified immunity balances two important interests—the need to hold

27   public officials accountable when they exercise power irresponsibly and the need to shield

28

1    officials from harassment, distraction, and liability when they perform their duties reasonably."

2    *Pearson*, 555 U.S. at 231.

3        "Whether qualified immunity applies thus 'turns on the objective legal reasonableness of

4    the action, assessed in light of the legal rules that were clearly established at the time it was

5    taken.'" *Chappell*, 706 F.3d at 1056 (quoting *Messerschmidt v. Millender*, 132 S.Ct. 1235, 1245

6    (2012)). In other words, a "[g]overnment official's conduct violates clearly established law

7    when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear'

8    that every 'reasonable official would have understood that what he is doing violates that right.'"

9    *al-Kidd*, 131 S.Ct.  at 2083 (alterations in original) (quoting *Anderson v.  Creighton*, 483 U.S.

10   635, 640 (1987)); *see also Padilla,* 678 F.3d at 758 (citation omitted).

11       The court finds that Plaintiff has adequately alleged the violation of clearly established

12   rights by alleging that Walker prohibited or admonished Plaintiff from wearing his religious

13   approved Kufi in Unit 6. Plaintiff also sufficiently alleges a violation of his clearly established

14   rights under the Equal Protection Clause. He asserts that he was treated differently than similarly

15   situated inmates when he alleges that Walker asked him to remove his religious head dress when

16   Jewish inmates he was with were permitted to keep their Yarmulkes on; that Walker stated she

17   did not like Muslims, and that black Muslim inmates were watched at the institution like they

18   had bombs strapped to their chests.

19       While Walker claims she relied in good faith on the regulations, Plaintiff alleges that he

20   was not required to have the kufi listed on his property card. This allegation appears consistent

21   with the portion of AR 810.3 submitted by Defendants, of which the court has taken judicial

22   notice.

23       For these reasons, Walker is not entitled to qualified immunity at this juncture.

24   ///

25   ///

26   ///

27   ///

28   ///

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING** Defendants' Motion to Dismiss (ECF No. 17) as to defendant LeGrand and dismissing LeGrand with prejudice, and **DENYING** the motion as to defendant Walker.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: January 11, 2016.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

- 13 -